USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPERNTICESHPS, JOURNEYMEN RETRAINING, EDUCATIONAL, AND INDUSTRIAL FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION, NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,

Petitioners,

v.

SHOWTIME ON THE PIERS, LLC.,

Respondent.

No. 16-CV-4788 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioners (collectively, "the Funds") seek reconsideration of this Court's September 2017 bench ruling in which it denied their motion for summary judgment concerning the confirmation of an arbitration award issued against Respondent Showtime on the Piers, LLC ("Showtime"). For the reasons set forth below, this motion is denied.

## BACKGROUND

This Court assumes familiarity with the facts—summarized on the record during the September 2017 ruling, *see* Tr. at 4:18–7:1—and recites only those portions necessary to the present motion. The Funds have alleged that on their behalf representatives of the New York City District Council of Carpenters ("Carpenters Union") met with the president of Showtime, Charles

Newman, on September 16, 2015, to discuss Showtime's status with the Carpenters Union. *See* Pet.'rs' Rule 56.1 Statement (Dkt. 21) ¶ 6. During this meeting, the Funds contend, Newman agreed that Showtime would become a signatory to a collective bargaining agreement ("CBA") containing an arbitration provision, which was effective retroactively from January 1, 2015. *Id.* ¶¶ 7, 8. That day, Showtime allegedly took over union work from Port Parties Ltd. ("Port Parties"), another company owned and operated by Newman, which has maintained a CBA with the Carpenters Union since 2010. *See* Jan. 6, 2017 Decl. of Luke Powers (Dkt. 34) ¶¶ 4–7, Ex. 9.

The Funds claim that they presented Newman with two forms to effectuate this agreement: the Interim Compliance Agreement ("ICA") and a separate administrative form. Newman allegedly completed the administrative form that day and emailed an executed copy of the ICA to the Carpenters Union on September 25, 2015. The ICA provides that the parties agreed to continue their "current Collective Bargaining Agreement," which, Petitioners assert, was one signed in 2014 between the Carpenters Union and the New York Trade Show Contractors Union, a period when Showtime performed work on the New York Passenger Ship Terminal. *See* Oct. 28, 2016 Decl. of Luke Powers (Dkt. 20) ¶¶ 8–10, Ex. 2.

Showtime disputes this account. The meeting was instead scheduled, Newman asserts, to organize a union audit of Port Parties' records. *See* December 2, 2016 Decl. of Charles Newman (Dkt. 27) ¶ 16. Newman claims he signed the administrative form only to authorize prepayments of fringe benefits pending a negotiated CBA, and did not sign or even discuss any document incorporating such an agreement on that day. *Id.* ¶ 17.

On June 22, 2016, the Funds commenced this action, seeking to confirm an arbitration award pursuant to a provision allegedly incorporated by the ICA between Showtime and the

Funds.[1] The Funds moved for summary judgment, while Showtime sought to vacate on the ground that no agreement to arbitrate existed. In denying both motions, this Court found that while there was no question that Newman signed the ICA on behalf of Showtime, there was a dispute of material fact as to whether the ICA incorporated the "Trade Show CBA" by reference and thereby bound Showtime to arbitration. Tr. 7:2–5.

In so finding, this Court applied the New York standard requiring that incorporation by reference be proven "beyond all reasonable doubt." Tr. at 7:17–20. The ICA provides that it "will confirm that [the parties] have agreed to extend our current [CBA] with the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, ("the Union"), which may expire on June 30, 2011 on the following terms." Tr. 8:22–9:2. But it was undisputed that there was no current CBA between the Funds and Showtime when the ICA was signed. Tr. 9:2–4. The language of the contract thus created ambiguity that required this Court to deny the Funds' motion for summary judgment. Tr. 10:4–11:1. They now move for reconsideration.

## STANDARD OF REVIEW

"Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b)." *Farmer v. United States*, No. 15-CV-6287 (AJN), 2017 WL 3448014, at *2 (S.D.N.Y. Aug. 10, 2017) (quotation omitted). They are "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Cohen Lans LLP v. Naseman*, No. 14-CV-4045 (JPO), 2017 WL 1929587, at *1 (S.D.N.Y. May 10, 2017) (quotation omitted). In order to prevail on such a motion, a movant must demonstrate "(i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need

---

[1] After Showtime failed to appear, the arbitrator found that a valid agreement to arbitrate existed between the parties.

3

to correct clear error or prevent manifest injustice." *Pablo Star Ltd. v. Welsh Gov't*, No. 15-CV-1167 (JPO), 2016 WL 2745849, at *1 (S.D.N.Y. May 11, 2016). "The standard governing motions for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp., Inc.*, No. 15-CV-6114 (PAE), 2017 WL 1283843, at *1 (S.D.N.Y. Apr. 5, 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also de los Santos v. Fingerson*, No. 97-CV-3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998) ("[T]he proponent of a motion for reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.").

## DISCUSSION

### I. The Funds' Request to File a Supplemental Declaration

As a preliminary matter, the Funds' request to file a supplemental declaration attaching additional agreements the ICA allegedly incorporated by reference is denied. A party seeking reconsideration may not introduce new evidence unless that evidence was "truly newly discovered or could not have been found by due diligence." *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (internal alteration omitted). The Funds moved for summary judgment on the basis that the ICA specifically incorporated the Convention and Exhibition Field agreement—the "Trade Show CBA." *See* Pet.'rs' Rule 56.1 Statement ¶ 7; Oct. 28, 2016 Decl. of Luke Powers ¶ 9, Ex. 1. They cannot now use a motion for reconsideration to advance a new theory—that any of a number of CBAs may have been incorporated—particularly when they acknowledge that "[t]hese agreements were not previously submitted to the Court because they

4

were not material to [the Funds'] motion for summary judgment." Pet.'rs' Mem. Supp. (Dkt. 50) at 10.

## II. Federal Preemption of New York State Contract Law

The Funds contend that this Court applied an incorrect standard in concluding that a dispute of material fact existed as to whether the Trade Show CBA was incorporated by reference into the ICA. Specifically, the Funds argue that the New York standard—requiring that incorporated documents be identifiable "beyond all reasonable doubt"—is preempted by Section 2 of the Federal Arbitration Act (FAA). 9 U.S.C. § 1 *et seq.* This position is meritless, principally for two reasons. First, the New York standard for incorporation by reference is not preempted by the FAA because the same rule applies universally to all contract clauses, including arbitration provisions. In any event, even if the standard applied by this Court is preempted, the Funds have failed under any relevant standard to show that the ICA incorporates the Trade Show CBA.

Under the FAA, state law is applied "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original). The Funds correctly note, however, that Section 2 of the FAA "preempts state law which treats arbitration agreements differently from any other contracts."[2] *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993); *see also Perry*, 482 U.S. at 492 n.9 ("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2."). Section 2 preempts, for instance, the New York rule that applies a

---

[2] Section 2 of the FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Perry*, 482 U.S. at 489.

5

heightened standard of proof to arbitration agreements—"express" and "unequivocal"— replacing it with the New York preponderance of the evidence standard that applies to all other, non-arbitration contract terms. *See Progressive*, 991 F.2d at 46.

The Funds seek to extend Section 2's reach to the New York standard for incorporation by reference. New York law mandates that a document cannot be incorporated by reference unless it is identified "beyond all reasonable doubt." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996). The Funds contend that this requirement is "likely preempted" because it may impose "a higher standard for incorporating an arbitration agreement by reference." *See* Pet.'rs' Mem. Supp. at 6–7.[3] The standard for incorporation by reference, however, applies equally to arbitration and non-arbitration provisions alike. *See, e.g., Maines Paper & Food Serv., Inc. v. Keystone Assocs.*, 23 N.Y.S.3d 398, 400 (N.Y. App. Div. 2015). This Court fails to discern, therefore, why Section 2 would be implicated. As the Funds rightly note, at least two courts in this Circuit have nonetheless suggested that this standard may be preempted because it renders arbitration clauses more difficult to enforce. *See Norcast S.ar.l. v. Castle Harlan, Inc.*, No. 12-CV-4973 (PAC), 2014 WL 43492, at *5, n.3 (S.D.N.Y. Jan. 6, 2014); *Torres v. Major Auto. Grp.*, No. 13-CV-0687 (NGG), 2014 WL 4802985, at *7 n.10 (E.D.N.Y. Sept. 25, 2014). Those decisions, however, appear to conflate the standard of proof with respect to arbitration provisions—which, the Circuit found in *Progressive*, is preempted—with the distinct standard for incorporation by reference. 991

---

[3] The Funds have not proposed a standard to replace "beyond all reasonable doubt" in the event of preemption, though they surely desire a less demanding one. In addition to the practical difficulties in resolving the instant motion, this further undermines their argument. As the Court described above, when the FAA preempts an arbitration-specific standard, the default contract rule of state law is applied instead, as it is state law that governs whether the parties have agreed to arbitrate in the first place. *See Progressive*, 992 F.2d at 45–46. The Funds' inability to identify an alternative standard, therefore, appears to cement the conclusion that the New York incorporation by reference standard is not preempted because the same rule applies universally, including to arbitration provisions, and there is no alternative standard under New York law.

F.2d at 46. This Court has not identified, nor have the Funds provided, any other authorities that purport to stand for the proposition they now advance.

Even assuming, *arguendo*, that the New York standard is preempted, the Funds have failed to demonstrate that no dispute of material fact exists as to whether the ICA incorporated the Trade Show CBA. Indeed, regardless of the applicable standard of proof of incorporation—"beyond all reasonable doubt," preponderance of the evidence, or some intermediate standard—the ICA is ambiguous. *See* Tr. 8:19–10:23. As this Court previously explained in great detail, the ICA provides that the parties "agreed to extend [their] current [CBA]," but the Funds and Showtime had no current CBA when the ICA was executed. Tr. 8:22–9:4. Although Newman had previously signed a CBA with the Funds, he did so in his capacity as president of Port Parties, and has expressly disclaimed any intention to have entered into a CBA on behalf of Showtime at the September 2015 meeting. *See* Tr. at 9:12–18. While interim agreements, such as the ICA, are standard in the industry and commonly entail acceptance of a CBA containing an arbitration provision, the ICA's ambiguity results in a factual question for a jury. *See* Tr. 10:15–23.

The Funds' reliance on federal labor policy is similarly unavailing. Although they correctly note that arbitration provisions are entitled to more liberal construction under the ambit of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, this Court must first determine whether a specific arbitration provision has been properly incorporated under state law. *See Progressive*, 991 F.2d at 45–46.

## CONCLUSION

For the foregoing reasons, the Funds' request for leave to file a supplemental declaration is denied, as is their motion for reconsideration. The parties are directed to confer as to next steps

7

and update the Court no later than September 28, 2018. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry forty-nine.

SO ORDERED.

Dated: September 21, 2018
New York, New York

_____
Ronnie Abrams
United States District Judge